WILLIAM DICKMAN, PLAINTIFF, v. P. BIRKHAUSER, ADMINISTRATOR, ET AL., DEFENDANTS.

1. **Homestead:** CLAIM OF WIFE AFTER DEATH OF HUSBAND. Where a wife voluntarily abandoned her husband several years before his death, purchased lots in her own name, erected a house thereon in which she had her home, *Held*, That upon his death she could not claim the homestead of her late husband as her own, but that she had a dower interest therein.

2. **Specific Performance.** An oral agreement for the conveyance of real estate when fully performed by the vendee, and possession is delivered to him, will be enforced in equity if clearly established. But vague and uncertain statements as to what a vendor intends to do in the future do not constitute such agreement.

APPEAL and cross-appeal from a decree of the district court of Richardson county, BROADY, J., presiding.

*John Saxon,* for plaintiff.

*C. Gillespie* and *E. W. Thomas,* for defendant Barbara Faller.

MAXWELL, J.

This action was brought in the district court of Richardson county by the plaintiff against the defendant to obtain specific performance of an alleged contract to convey certain real estate described in the petition, which it is stated the deceased in his life time agreed to convey to the plaintiff. The widow of the deceased filed a cross petition claiming the land in question as a homestead, and also dower therein. The heirs at law also filed an answer, to which it is unnecessary to refer. The court below found against the plaintiff and dismissed the petition, and also found against the widow as to the right of homestead, and dismissed the cross bill. Both parties appeal.

.It appears from the evidence that Baptiste Faller and Barbara Faller, one of the defendants herein, were married in 1862, and for fifteen or sixteen years thereafter lived together as husband and wife on the land in controversy; that in 1878 or 1879 she left her husband, and soon thereafter brought an action for a divorce. The case is reported in 10 Neb., 144. The decree of the court below granting a divorce was reversed for want of evidence, and the case remanded for further proceedings. No further action seems to have been taken in the case. From the time the action for a divorce was begun she refused to live with her husband, but went to Falls City, a distance of eight or nine miles from his residence, and there supported herself by her labor, purchased and paid for two lots in that city, and erected a small dwelling thereon, and was residing therein at the time of his death.

As a rule, the domicile of the husband. is that of the wife. This rule is based, however, to a great extent upon the common law doctrine that by marriage the husband and wife become one person in law—that is, the legal existence of the wife is suspended during marriage. 1 Blackstone Com., 442. Co. Litt., 112. 2 Kent Com., 129. Marriage necessarily implies a home, and the right of each party to the society of the other. The parties promise in effect to live together as husband and wife, and the observance of this obligation is binding upon them. The identity of the wife's domicile with that of the husband is merely a legal fiction, based upon the supposed suspension of the legal existence of the wife during marriage. For many purposes, in this country at least, she may acquire a domicile distinct from that of her husband, as to bring an action for divorce and similar purposes. *Jenness v. Jenness*, 24 Ind., 355. *Hanberry v. Hanberry*, 29 Ala., 720. *Harteau v. Harteau*, 14 Pick., 181. *Ditson v. Ditson*, 4 R. I., 87. The question of the actual domicile of the wife in actions for divorce, and where she seeks to assert her in-

dividual rights against her husband or his estate, is one of fact and not of law. In such cases she is asserting her own rights, and must show that she is entitled to the relief prayed for. In this case she abandoned her husband years before his death, and purchased and paid for a home of her own. There was an actual and continued abandonment on her part, and the home of her husband by her own voluntary action ceased·to be her home. A homestead in law means a home place, or place of the home, and is designed as a shelter of the homestead roof, and not as a mere investment in real estate or the rents and profits derived therefrom. 1 Wash. R. P. (4 ed.), 345. In other words, it is the actual home or domicile of the party. There is no claim that the defendant's home was at the residence of her husband at the time of his death. She had for years prior to that event abandoned that home and taken possession of another, purchased with her own money. The latter therefore was her homestead, and not that of her husband. She is entitled, however, to dower in the land, but that question cannot be settled in this action. The court did not err, therefore, in dismissing the cross petition.

2.   The testimony shows that the plaintiff was the son-in-law of Baptiste Faller; that in the winter of 1881–2 he was residing in Buffalo, N. Y.; that he had but little means, and depended on his daily labor for the support of his wife and children; that in the spring of 1882 Mr. Faller sent $200 to the plaintiff to pay the expense of removing with his family to this state; that on receipt of the money he and his family came here and were taken at once by Faller to his home on the land in controversy; that Faller thereafter made his home with the plaintiff and his family until his death, which occurred in December, 1882; that Faller stated at various times to several persons that plaintiff and his family should have a permanent home there; but there is an entire failure to prove any agreement

to convey the land to the plaintiff, or that the plaintiff took possession in pursuance of an agreement to convey. An agreement to convey when there has been full performance by the vendee, and possession delivered to him, will be enforced in equity when clearly established. *Thrall v. Thrall,* 19 N. W. R., 355. *Twiss v. George,* 33 Mich., 253. *Rhodes v. Rhodes,* 3 Sand. Ch., 279. *Gupton v. Gupton,* 47 Mo., 37. *Wright v. Tinsley,* 30 Id., 389.

But there is an entire failure of proof upon these points. Vague and uncertain statements as to what a party intended to do in the future are not sufficient to justify a court of equity in entering a decree of specific performance. As there is a failure of proof, the court did not err in dismissing the action. The judgment is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.